# In the United States Court of Federal Claims

No. 15-16 C
Filed: August 26, 2015

| | |
|---|---|
| AUTHENTIC APPAREL GROUP, LLC,<br><br>and<br><br>RON REUBEN,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Jurisdiction;<br>Motion To Dismiss,<br>RCFC 12(b)(1);<br>Tucker Act,<br>28 U.S.C. § 1491. |

**J. Joseph Bainton**, BaintonLynch, LLP, New York, New York, Counsel for Plaintiffs.

**Devin A. Wolak**, United States Department of Justice, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND ORDER

## I. RELEVANT FACTUAL BACKGROUND.[1]

On June 25, 2007, the United States Department of the Army ("Army" or "the Government") and All American Apparel Co., Inc. ("All American") entered into a License Agreement (the "First License Agreement") for the design, manufacture, and sale of goods bearing various Army trademarks. Compl. ¶ 21; *see also* Gov't App'x A1–A46. Mr. Terrance Spann[2] signed on behalf of the Army, and Mr. Roger McGuinness[3] signed on behalf of All American. Gov't App'x A25. The First License Agreement expired on December 31, 2010. Gov't App'x A26.

[1] The facts discussed herein are derived from the January 6, 2015 Complaint and the Appendix to the Government's May 27, 2015 Motion To Dismiss ("Gov't App'x A1–A118").

[2] Mr. Spann was the Chief of the Regulatory Law & Intellectual Property Division of the United States Army Legal Services Agency. Gov't App'x A25.

[3] Mr. McGuiness was the President of All American. Gov't App'x A25.

On August 10, 2010, the Army and Authentic Apparel Group, LLC ("Authentic Apparel") entered into another License Agreement (the "Second License Agreement"). Compl. ¶¶ 91–92; *see also* Gov't App'x A47–A96. Again, Mr. Spann signed on behalf of the Army, and Mr. McGuinness signed on behalf of Authentic Apparel. Gov't App'x A93. The Second License Agreement expired on December 31, 2013. Gov't App'x A75.

On May 4, 2012, the Army and Authentic Apparel amended the Second License Agreement to extend it through December 31, 2014. Gov't App'x A94–A95. Mr. Spann signed on behalf of the Army, but this time, Mr. Ronnie Reuben[4] signed on behalf of Authentic Apparel. Gov't App'x A95.

On August 22, 2012, the Army and Authentic Apparel amended the Second License Agreement a second time. *See* Gov't App'x A96. Mr. Spann signed on behalf of the Army, and Reuben signed on behalf of Authentic Apparel. Gov't App'x A96.

## II. PROCEDURAL HISTORY.

On January 6, 2015, Authentic Apparel and Mr. Reuben ("Plaintiffs") filed a Complaint in the United States Court of Federal Claims, alleging that the Army "breached the Second License Agreement by denying Authentic [Apparel] the right to . . . us[e] the licensed Army trademarks as trademarks on all of Authentic[ Apparel]'s goods, its website and its advertising generally." Compl. ¶ 120.

On February 27, 2015 and May 8, 2015, the Government filed Unopposed Motions For Extensions Of Time To Respond To The January 6, 2015 Complaint that the court granted.

On May 27, 2015, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). On July 28, 2015, Plaintiffs filed a Response ("Pl. Resp."). On August 14, 2015, the Government filed a Reply ("Gov't Reply").

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "'only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). Therefore, to satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, or executive agency regulation that provides a substantive right to money damages. *See*

[4] Mr. Reuben was the Chairman of Authentic Apparel. Gov't App'x A95.

*Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

Whether the court has jurisdiction to adjudicate the claims alleged in the January 6, 2015 Complaint is discussed herein.

**B. Standing.**

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit[.]" *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992)). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan*, 504 U.S. at 561. Specifically,

> a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180–81 (2000).

To have standing in a breach of contract action, the plaintiff must be in privity with the Government. *See Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003) ("To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States."); *see also Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990) ("To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the [G]overnment."); *see also Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The [G]overnment consents to be to be sued only by those with whom it has privity of contract[.]").

Whether Plaintiffs have standing to seek an adjudication of the claims alleged in the January 6, 2015 Complaint also is discussed herein.

**C. Standard For Motion To Dismiss Pursuant To RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all

reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the Complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). But, the court may consider evidence outside the pleadings when jurisdictional facts are in dispute. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."). As such, consideration of the Appendix to the Government's May 27, 2015 Motion To Dismiss is appropriate, because the relevant License Agreements contained therein provide the factual basis for whether the court has jurisdiction to adjudicate Plaintiffs' claims. Moreover, Plaintiffs did not challenge the Government's Appendix in their July 28, 2015 Response.

### D. The Government's May 27, 2015 Motion To Dismiss.

#### 1. The Government's Argument.

The Government argues that "portions of the [C]omplaint must be dismissed due to a lack of privity with the United States." Gov't Mot. at 7. "Mr. Reuben is a party to neither the [First] License Agreement nor the [Second] License Agreement. Accordingly, Mr. Reuben lacks privity with the United States and must be dismissed as a plaintiff from this case." Gov't Mot. at 7 (citations omitted).[5]

#### 2. Plaintiffs' Response.

Plaintiffs respond that Mr. Reuben should not be dismissed as a plaintiff, because he was "an intended third-party beneficiary of both the First License Agreement and the Second License Agreement[.]" Pl. Resp. at 13. And, "neither License Agreement contains a standard 'No Third-Parties Beneficiaries Clause,'" so that Mr. Reuben is a third-party beneficiary under governing New York law. Pl. Resp. at 11–12.

#### 3. The Government's Reply.

The Government replies that contract claims in the United States Court of Federal Claims are governed by the United States Court of Appeals for the Federal Circuit. Gov't Reply at 4. As such, Mr. Reuben does not qualify as a third-party beneficiary, because this is not an "exceptional" circumstance in which the contract was intended to benefit Mr. Reuben "directly." Gov't Reply at 4–5 (citing *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005)). As such,

[5] The Government's May 27, 2015 Motion To Dismiss also argued that Authentic Apparel was not in privity with the United States for the 2007 License Agreement. Gov't Mot. at 7. But, the parties subsequently agreed that Authentic Apparel is not seeking to recover under the First License Agreement. As such, this argument is now moot. *Compare* Pl. Resp. at 4 ("Authentic [Apparel] asserts no such claim for recovery under the First License[.]"), *with* Gov't Reply at 2 n.2 ("[T]he Government agrees that the issue is now moot.").

Mr. Reuben lacks standing to seek an adjudication of the claims alleged in the January 6, 2015 Complaint. Gov't Reply at 7.

**4. The Court's Resolution.**

"[F]ederal law [applies] to questions directly involving the rights and duties of the Federal Government." *Miree v. DeKalb Cnty.*, 433 U.S. 25, 31 (1977). "In the context of contracts between the federal government and its citizens, the courts have opted for a uniform federal common law of contracts as the federal rule of decision, to avoid the uncertainty of conflicting state laws." *Price v. United States*, 46 Fed. Cl. 640, 646 (2000) (citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67 (1943) (holding that "[i]n absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards")). As such, federal law governs Plaintiffs' claims.

"A breach of contract claim requires two components: (1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty." *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989) ("To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach.")).

Although Mr. Reuben does not argue that he is in privity of contract with the Government, he asserts that he is "an intended third-party beneficiary of both the First License Agreement and the Second License Agreement[.]" Pl. Resp. at 13; *see also* WILLISTON ON CONTRACTS § 37.1 (4th ed. 2013) ("[A]n exception to the need for privity was developed through the doctrine of third party beneficiaries."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981) (explaining intended beneficiaries).

The necessary determination of intended third-party beneficiary status "raises a serious issue of standing[.]" *Flexfab*, 424 F.3d at 1259. As in *Flexfab*, "[b]ecause [Mr. Reuben] was not a direct party to the contract . . . [he] has standing to enforce the contract only if [he] was an intended third-party beneficiary." *Id.*

> In order to prove third-party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit that party *directly*. The intent of the parties to the contract is therefore the cornerstone of a claim for third-party beneficiary status.
>
> Proof of the requisite intent is no small matter, for the [United States] Supreme Court has recognized the exceptional privilege that third-party beneficiary status imparts. The privilege should not be granted liberally. . . .

> In short, it is sufficient to ask in the typical case whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him.

*Id.* at 1259–60 (emphasis added) (citations omitted); *see also Fed. Deposit Ins. Co. v. United States*, 342 F.3d 1313, 1319 (Fed. Cir. 2003) (holding that third-party beneficiary status is not established "merely because the contract would benefit [a party]"); *see also Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001) ("In order to prove third party beneficiary status, a party must demonstrate that the contract . . . reflects an intention to benefit the party directly. Third party beneficiary status is an 'exceptional privilege[.]'").

Here, Mr. Reuben argues that the lack of a "no third-party beneficiaries clause" entitles him to third-party beneficiary status. Pl. Resp. at 12. But, the fact that the License Agreements did not prohibit third-party beneficiaries does not mean that the parties "intend[ed] to benefit [Mr. Reuben] directly." *Flexfab*, 424 F.3d at 1259. The only place Mr. Reuben's name appears in the License Agreements is his signature to the May 4, 2012 First Amendment and August 22, 2012 Second Amendment to the Second License Agreement. Gov't App'x A95–A96. There, Mr. Reuben signed as Chairman of Authentic Apparel, not in his personal capacity. Gov't App'x A95–A96 (providing that the parties to the amendments were Authentic Apparel and the Army). It is well established that corporations are legal entities separate from their owners. *See S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1331 (Fed. Cir. 2005) ("[A] corporation is generally considered to be a separate legal entity from its shareholder[.]"). As such, the Second License Agreement was intended to benefit Authentic Apparel, not Mr. Reuben.[6] *See id.*

In addition, the January 6, 2015 Complaint does not allege that either the First or Second License Agreement imparts the "exceptional privilege" of third-party beneficiary status to Mr. Reuben. Therefore, the January 6, 2015 Complaint failed to establish a contractual relationship with the Government, a jurisdictional prerequisite under the Tucker Act. *See* 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[.]"). Moreover, because Mr. Reuben is not a third-party beneficiary to the First or Second License Agreements, he lacks standing to seek an adjudication of the claims alleged in the January 6, 2015 Complaint. *See Flexfab*, 424 F.3d at 1259 ("Because [Mr. Reuben] was not a direct party to the contract . . . [he] has standing to enforce the contract only if [he] was an intended third-party beneficiary.").

---

[6] Moreover, the Second License Agreement contains an integration clause that provides:

> This Agreement as executed . . . constitutes the complete and exclusive agreement and understanding between the parties hereto and terminates and supersedes any prior agreement or understanding relating to the subject matter hereof between OWNER and LICENSEE. . . . There are no representations, discussions, proposals, promises, agreements, warranties, covenants or undertakings, whether oral or written, other than those contained herein.

Gov't App'x A73.

## IV. CONCLUSION.

For the reasons discussed herein, the Government's May 27, 2015 Motion To Dismiss is **granted**. *See* RCFC 12(b)(1). The Clerk of Court is directed to **dismiss** Mr. Reuben as a plaintiff from this case. The sole remaining issue is whether the Government breached the Second License Agreement with Authentic Apparel. The parties will submit a proposed scheduling order within thirty days.

**IT IS SO ORDERED**.

s/ Susan G. Braden
**SUSAN G. BRADEN,**
**Judge.**